IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:19-cv-00078-MR

| | |
|---|---|
| GEGORGE JONES, ) ) Plaintiff, ) ) vs. ) ) BRIAN D. PARRY, ) ) Defendant. ) _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. [Doc. 34].

**I.    PROCEDURAL BACKGROUND**

The Plaintiff George Jones, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at the Alexander Correctional Institution ("Alexander"). [Doc. 1]. The Complaint asserted various claims against Alexander employee Officer Brian D. Parry in his individual and official capacities stemming from Parry's alleged use of excessive force on Plaintiff. [Id.]. Plaintiff alleged as follows. On December 10, 2018, while he was recovering from prostate cancer therapy, Plaintiff requested to watch television. In response, Officer Parry harassed, taunted, body shamed, and assaulted Plaintiff, breaking

Plaintiff's left leg and "disrupting [Plaintiff's] care and wellness." [Doc. 1 at 3].

The Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff was allowed to proceed with his Eighth Amendment excessive force claim. [Doc. 14]. On October 19, 2020, Officer Parry moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 34]. In support of his summary judgment motion, Officer Parry submitted a memorandum; a Statement of Material Facts; his own Declaration; the Affidavits of Christopher L. Poteat, Regina Jordan, and Jennifer Tilley; various prison records and policies; and video footage of the alleged incident. [Docs. 35, 36, 37-1 through 37-8, 45-1].

The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 39]. Plaintiff timely filed a response to Officer Parry's summary judgment motion consisting of Plaintiff's Affidavit and certain medical records. [Docs. 42, 42-1].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct.

4

2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.[1]

At the relevant times, Officer Parry was a correctional officer at Alexander. [Doc. 37-6 at ¶ 3: Parry Aff.]. On December 10, 2018, at approximately 5:00 p.m., Plaintiff was inside Main Medical recuperating from brachytherapy.[2] [Id. at ¶ 5; Doc. 42 at 5: Jones Aff. Ex.]. He had a catheter in place. [Doc. 42 at ¶ 19]. Plaintiff asked Parry if Plaintiff could come out of his cell and watch television. [Doc. 37-6 at ¶ 6]. Parry told Plaintiff that

---

[1] A camera captured what occurred inside of Plaintiff's medical cell. There were, however, no cameras in the medical area, so footage of what happened outside of Plaintiff's cell is unavailable. [See Doc. 37-5 at 7]. As noted, Officer Parry's forecast of evidence includes the video footage of the incident, which contradicts the Plaintiff's forecast of evidence, particularly Plaintiff's evidence as to Plaintiff's conduct immediately preceding Officer Parry's use of force. Because a plaintiff cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, the Court cannot adopt Plaintiff's account of the incident for the purpose of ruling on this motion. See Scott, 550 U.S. at 380, 127 S. Ct. at 1776. The Court does, however, consider Plaintiff's forecast of evidence relative to what occurred outside the view of the camera.

[2] Brachytherapy is a form of radiation therapy used to treat prostate cancer which involves the placing radioactive sources in the prostate gland.

5

Case 5:19-cv-00078-MR Document 46 Filed 04/06/21 Page 5 of 13

Parry did not know if Plaintiff could come of his cell because Plaintiff was in an isolation room. [Id. at ¶ 7]. Parry asked the nurse if Plaintiff could come out of his cell to watch television and the nurse said that he could. [Id. at ¶ 8; Doc. 37-7 at ¶¶ 6-7: Jordan Aff.; Doc. 37-8 at ¶¶ 6-7: Tilley Aff.]. As Parry opened Plaintiff's door, Plaintiff pushed the door open, stating that he "was not a seg inmate." [Id. at ¶ 9; see Doc. 37-7 at ¶¶ 8-9; Doc. 37-8 at ¶¶ 8-9]. In the medical area, outside the view of the camera, Parry explained to Plaintiff why Parry did not allow Plaintiff out of his room right away. [Id. at ¶ 10; see Doc. 37-7 at ¶ 10]. Plaintiff raised his voice at Parry several times and Parry asked Plaintiff three times if Plaintiff wanted to watch television. [Id. at ¶¶ 11-12; see Doc. 37-7 at ¶ 10]. Plaintiff stood in the doorway with a fist balled up, stating that he "was not a fucking seg inmate." [Id. at ¶ 13; see Doc. 37-8 at ¶ 11]. Because Plaintiff was speaking to Parry in an aggressive manner, Parry told Plaintiff that Plaintiff was not going to watch television. [Id. at ¶ 14]. Parry gave Plaintiff a direct order to get back inside his room and Plaintiff refused. [Id. at ¶ 17]. Parry pushed Plaintiff back inside of the room and Plaintiff fell to the floor landing on his bottom and right elbow. [Doc. 45-1]. Plaintiff immediately jumped up while Parry appears to be directing Plaintiff to stay where he is. [Id.]. Plaintiff moved toward Parry in an aggressive manner, trying to get out of the room. Parry then put his hands

6

on Plaintiff's chest and right upper arm. [Id.]. Plaintiff again came at Parry. Parry then put his left hand at the base of Plaintiff's neck and pushed Plaintiff back into the cell. [Id.]. Plaintiff immediately and aggressively rushed at Parry with his right arm cocked, leaving the cell and the view of the camera. [Id.; see Doc. 37-6 at ¶¶ 18-19]. To prevent an assault and to regain control of Plaintiff, Parry stepped forward and grabbed the front of Plaintiff's shirt and placed his right hand on Plaintiff's shoulder. [Doc. 37-6 at ¶ 20]. Plaintiff swung at Parry. [Id. at ¶ 21; see Doc. 37-7 at ¶ 12; see Doc. 37-8 at ¶ 13]. Parry then put Plaintiff on the ground, again to regain control of the Plaintiff. [Id. at ¶ 22; Doc. 37-7 at ¶ 13; Doc. 37-8 at ¶ 14]. Apparently, in regaining control of Plaintiff, Parry placed his left knee on the back of Plaintiff's left calf. [Doc. 42 at ¶ 10]. Plaintiff claims that Parry then grabbed Plaintiff's left foot and pulled it upwards, resulting in the two fractures. [Id.]. In his Witness Statement, Parry states that, once he got Plaintiff to the floor, Plaintiff refused to put his arms behind his back. [Doc. 37-5 at 10]. After Parry told Plaintiff to stop resisting and to put his hands behind his back, Parry was finally able to get Plaintiff handcuffed. [Id.]. Other correctional staff also assisted with gaining control of Plaintiff. [Doc. 37-6 at ¶ 23].

During the above-described events, Parry perceived Plaintiff's refusal to follow orders and aggressive resistance as a threat to staff safety and the

security of the facility. [Id. at ¶ 24]. Parry used only that amount of force necessary to achieve the correctional objectives of preventing assault, to control and subdue Plaintiff, and to ensure Plaintiff's compliance with lawful orders. [Id. at ¶ 26]. Furthermore, Parry ceased using force once there was no longer a need for it. [Id. at ¶ 27].

After the incident, Plaintiff was medically assessed and sent to Catawba Valley Medical Center (CVMC) for further evaluation. [Doc. 37-1 at ¶ 32: Poteat Aff.]. Plaintiff was diagnosed with a displaced left tibial shaft fracture and a minimally displaced left proximal fibula fracture. [Doc. 42 at 5-6]. The tibial fracture was surgically repaired with a steel rod. [Id. at 6-7, 9; see id. at ¶¶ 14, 16].

During the incident, Plaintiff claims to have defecated himself twice and that he had to clean himself while at the hospital. [Doc. 42 at ¶ 15]. Plaintiff denies doing anything to "deserve this type of treatment from Officer Parry." [Id. at ¶ 17]. Plaintiff claims that he had worked his way up to having been approved for work release and Plaintiff "wasn't going to do anything to jeopardize that status." [Id. at ¶ 18]. Plaintiff did not lose his work release status after the incident. [Id.]. Since the incident, Plaintiff remains unable to urinate without a catheter and cannot work because he cannot stand for long periods of time. [Id. at ¶¶ 16, 19].

8

## IV. DISCUSSION

### A. Sovereign Immunity

Plaintiff sues Officer Parry in his individual and official capacity. [Doc. 1 at 1]. A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Officer Parry is entitled to summary judgment on Plaintiff's official capacity claim.

9

## B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, Plaintiff contends that Officer Parry violated Plaintiff's rights under the Eighth Amendment by using excessive force on Plaintiff. The forecast of evidence before the Court, however, leaves no genuine issue of material fact for trial. The video evidence shows that Plaintiff charged Officer Parry in a quick and aggressive manner, with his arm cocked, after having refused multiple direct orders to return to his cell and after Officer Parry attempted to use relatively minimal force to get Plaintiff to return to and stay inside of his cell. Moreover, the video evidence reflects that Officer Parry was forced to "act in haste, under pressure, and [ ] without the luxury of a second chance." See Williams 77 F.3d at 761 (internal quotation marks and citation omitted). While it is certainly unfortunate that Plaintiff's leg was broken in the course of Officer Parry's efforts to quell Plaintiff's serious and significant aggression, Plaintiff's conduct left no room for anything but the use of force. And Plaintiff has failed to forecast sufficient evidence that Officer Parry used force "maliciously and sadistically for the very purpose of causing harm." Id. at 761 (internal quotation marks and citation omitted). As such, the Court will grant Defendant's summary judgment on Plaintiff's individual capacity claim as well.

As such, the Court will grant Defendant's Motion for Summary Judgment.

## C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Officer Parry violated a constitutional right, Officer Parry is also entitled qualified immunity on Plaintiff's individual capacity claim. The Court, therefore, grants summary judgment for Officer Parry on this ground as well.

## VI. CONCLUSION

For all the foregoing reasons, Defendant Parry's motion for summary judgment is granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant Parry's Motion for Summary Judgment [Doc. 34] is **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: April 6, 2021

Martin Reidinger
Chief United States District Judge